UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

JEFFORDS STEEL & ENGINEERING CO.,

                          Plaintiff,

                                                              8:19-CV-1529
v.                                                     (GTS/CFH)

COMPASS CONSTR. a/k/a COMPASS
CONSTR., LLC,

                          Defendant.

_____

APPEARANCES:                                OF COUNSEL:

HINCKLEY, ALLEN & SNYDER LLP       NATHAN R. SABOURIN, ESQ.
  Counsel for Plaintiff
30 South Pearl Street, Suite 901
Albany, NY 12207

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

Currently before the Court, in this breach of contract action filed by Jeffords Steel &

Engineering Company ("Plaintiff") against Compass Construction ("Defendant"), is Plaintiff's

motion for default judgment against Defendant pursuant to Fed. R. Civ. P. 55(b), and Local Civil

Rule 55.2 of the District's Local Rules of Practice.  (Dkt. No. 13.)  For the reasons stated below,

Plaintiff's motion is granted.

## I.     RELEVANT BACKGROUND

###     A.     Plaintiff's Complaint

Generally, liberally construed, Plaintiff's Complaint alleges as follows: (1) on or about

March 29, 2018, Plaintiff entered into an agreement with Paradox Brewery ("Paradox") to

construct a new tasting room and brewing facility on real property owned by Paradox; (2) in

furtherance of the project, Plaintiff and Defendant entered into a written subcontract agreement, dated July 9, 2018, pursuant to which Defendant agreed to furnish and install siding, roofing, and insulation for the additional room and brewing facility; (3) the price of the subcontract was $179,930.00, and Defendant's work was to be completed by December 16, 2018; (4) under the terms of the subcontract, (a) should any subcontractor, supplier, or vender of Defendant make a lien claim or other claim for payment, then Defendant shall defend and indemnify Plaintiff and Paradox from all loss, liability, damage, or expense–including reasonable attorneys' fees and litigation expenses–incurred in connection therewith, (b) should Defendant default or neglect to carry out its work thereunder and fail within five days after receipt of notice of such default from Plaintiff to commence and continue correction of such default or neglect, then Plaintiff may take such steps necessary to remedy the default and offset the costs incurred to take such actions from any current or future payments due Defendant, (c) should the costs incurred by Plaintiff to remedy Defendant's default or neglect exceed the amounts due or owed to Defendant under the subcontract, then Defendant shall be liable to Plaintiff for such excess costs, (d) should Defendant repeatedly fail or neglect to carry out its work and fail within a ten day period after receipt of notice to commence and continue correction of such default or neglect from Plaintiff, then Plaintiff can terminate the subcontract and complete Defendant's work by whatever method Plaintiff deems expedient and offset the costs incurred to take such actions from any current or future payments due Defendant, and (e) should the costs incurred by Plaintiff to complete Defendant's work following termination of the subcontract exceed the amounts due or owed to Defendant under the subcontract, then Defendant shall be liable to Plaintiff for such excess costs; (5) upon information and belief, Defendant commenced work under the subcontract in or around

2

the end of September 2018; (6) on or about February 7, 2019, notwithstanding the failure to complete the subcontract work in accordance with the subcontract's express timeframe and the fact that substantial portions of the subcontract work still remained, Defendant unilaterally and without prior notice removed all of its personnel, materials, and equipment from the Paradox site and informed others it did not intend to continue progressing its contractual obligations; (7) on February 14, 2019, Plaintiff served written notice of default and demand for correction upon Defendant, pursuant to Articles 3.5 and 7.2.1 of the subcontract; (8) as of March 7, 2019, Defendant had taken no steps toward remedying its default and/or correcting its neglect as required by the subcontract; (9) on or about March 7, 2019, Plaintiff served a notice of termination of the subcontract upon Defendant and further notified Defendant that, pursuant to the terms of the subcontract, Plaintiff would offset the costs incurred to complete and correct any of Defendant's work under the subcontract from any current or future payments due Defendant, and/or hold Defendant liable for any costs incurred that were in excess of the remaining balance of the subcontract in connection therewith; (10) at the time of termination, Defendant had completed approximately fifty-five percent of the subcontract, but Plaintiff had remitted payment to Defendant for approximately seventy-five percent of the subcontract; (11) due to Defendant's breach of the subcontract and subsequent termination, Plaintiff was forced to retain other subcontractors and utilize Plaintiff's own workforce to complete Defendant's remaining work; (12) in addition to Defendant's abandonment of the subcontract, Plaintiff discovered that certain portions of the work that were already completed by Defendant (and for which Plaintiff had already remitted payment) had been completed improperly and/or defectively; and (13) as a

3

result, Plaintiff incurred additional costs to remediate and/or cure the defective work performed by Defendant.  (*See generally* Dkt. No. 1 [Plf.'s Compl.])

Generally, based on these factual allegations, Plaintiff's Complaint asserts the following two claims: (1) a claim that Defendant breached the parties' contract (specifically, its obligation to carry out its work under the contract and remedy its default on that obligation) by unilaterally abandoning its obligations under the contract, and causing Plaintiff to incur more than $400,000 to complete Defendant's work  and remedy its deficient work; and (2) a claim that Defendant breached the parties' contract (specifically, its obligation to defend and indemnify Plaintiff from all loss in the event a subcontractor, supplier or materialman makes a lien claim against the project) by failing to discharge the mechanics liens filed by its subcontractors, suppliers and materialmen, and causing Plaintiff to incur more that $2,000 to obtain discharge lien bonds.  (*Id*.)

### B.      Procedural History

On December 10, 2019, Plaintiff filed its Complaint in this action.  (Dkt. No. 1.)  On January 7, 2020, Plaintiff served its Complaint on Defendant.  (Dkt. No. 4.)  As of the date of this Decision and Order, Defendant has filed no Answer to that Complaint.  (*See generally* Docket Sheet.)  On July 2, 2020, Plaintiff filed a request for entry of default against Defendant pursuant to Fed. R. Civ. P. 55(a) and Local Rule 55.2(a).  (Dkt. No. 12.)  On July 6, 2020, the Clerk of Court entered a default against Defendant.  (Dkt. No. 13.)  On November 11, 2019, Plaintiff filed a motion for default judgment against Defendants, pursuant to Fed. R. Civ. P. 55(b) and Local Rule 55.2(b).  (Dkt. No. 13.)  On July 24, 2020, Plaintiff served its motion on Defendant.  (Dkt. No. 15.)  As of the date of this Decision and Order, Defendant has not

responded to the motion, attempted to cure any of the entries of default, or even appeared.  (*See generally* Docket Sheet.)

## II.     RELEVANT LEGAL STANDARD

"Federal Rule of Civil Procedure 55 provides a two-step process that the Court must follow before it may enter a default judgment against a defendant."  *Robertson v. Doe*, 05-CV-7046, 2008 WL 2519894, at \*3 (S.D.N.Y. June 19, 2008).  "First, under Rule 55(a), when a party fails to 'plead or otherwise defend . . . the clerk must enter the party's default.'"  *Robertson*, 2008 WL 2519894, at \*3 (quoting Fed. R. Civ. P. 55[a]).  "Second, pursuant to Rule 55(b)(2), the party seeking default judgment is required to present its application for entry of judgment to the court."  *Id*.  "Notice of the application must be sent to the defaulting party so that it has an opportunity to show cause why the court should not enter a default judgment."  *Id*. (citing Fed. R. Civ. P. 55[b][2]).  "When an action presents more than one claim for relief . . . the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties . . . if the court expressly determines that there is no just reason for delay."  Fed. R. Civ. P. 54(b).

When a court considers a motion for the entry of a default judgment, it must "accept[ ] as true all of the factual allegations of the complaint . . . ."  *Au Bon Pain Corp. v. Artect, Inc*., 653 F.2d 61, 65 (2d Cir. 1981) (citations omitted).  "However, the court cannot construe the damages alleged in the complaint as true."  *Eng'rs Joint Welfare, Pension, Supplemental Unemployment Benefit and Training Funds v. Catone Constr. Co., Inc*., 08-CV-1048, 2009 WL 4730700, at \*2 (N.D.N.Y. Dec. 4, 2009) (Scullin, J.) (citing *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 [2d Cir. 1999] [citations omitted]).  "Rather, the court must 'conduct an inquiry in order to ascertain the amount of damages with reasonable certainty.'"  *Eng'rs Joint Welfare,*

5

*Pension, Supplemental Unemployment Benefit and Training Funds*, 2009 WL 4730700, at *2

(quoting *Alcantara*, 183 F.3d at 155 [citation omitted]).  This inquiry "involves two tasks: [1]

determining the proper rule for calculating damages on such a claim, and [2] assessing plaintiff's

evidence supporting the damages to be determined under this rule." *Alcantara*, 183 F.3d at 155.

Finally, in calculating damages, the court "need not agree that the alleged facts constitute a valid

cause of action . . . ." *Au Bon Pain*, 653 F.2d at 65 (citation omitted).

Under Local Rule 55.2(a), when requesting an entry of default by the Clerk of the Court,

the moving party must submit (a) the Clerk's certificate of entry of default, (b) a statement

showing the principal amount due (not to exceed the amount demanded in the Complaint and

giving credit for any payments with the dates of payments), (c) a computation of the interest to

the day of judgment, (d) a per diem rate of interest, (e) the costs and taxable disbursements

claimed, and (f) an affidavit of the moving party or the party's attorney.  N.D.N.Y. L.R. 55.2(a).

The appended affidavit must show that (a) the party against whom judgment is sought is not an

infant or incompetent person, (b) the party against whom judgment is sought is not in military

service, (c) the party against whom judgment is sought has defaulted in appearance in the action,

(d) service was properly effected under Fed. R. Civ. P. 4, (e) the amount shown in the statement

is justly due and owing and no part has been paid except as set forth in the party's other

statement, and (f) disbursements sought to be taxed have been made in the action or will

necessarily be made or incurred.  *Id.*

Under Local Rule 55.2(b), when moving for an entry of default judgment by the Court,

the moving party must submit (a) the Clerk's certificate of entry of default, (b) a proposed form

of default judgment, (c) a copy of the pleading to which no response has been made, and (d) an

6

affidavit of the moving party or its attorney setting forth the facts required by Local Rule 55.2(a).

N.D.N.Y. L.R. 55.2(b).

### III.   ANALYSIS

After carefully considering whether Plaintiff is entitled to a default judgment, the Court

answers that question in the affirmative for the following reasons.

An entry of default "formalizes a judicial recognition that a defendant has, through its

failure to defend the action, admitted liability to the plaintiff." *City of New York v. Mickalis*

*Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011).  However, "[a] court's decision to enter a

default against defendants does not by definition entitle plaintiffs to an entry of a default

judgment.  Rather, the court may, on plaintiffs' motion, enter a default judgment if liability is

established as a matter of law when the factual allegations of the complaint are taken as true."

*Bricklayers and Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry &*

*Const., LLC*, 779 F.3d 182, 188 (2d Cir. 2015).

Here, as an initial matter, the Court finds that Plaintiff's submissions meet the procedural

requirements of Local Rule 55.2.  (Dkt. No. 15, Attach. 2 [Sabourin Aff.]; Dkt. No. 15, Attach. 3

[Memo. of Law].)  The Court therefore must assess whether Plaintiff has sufficiently alleged

facts plausibly suggesting the existence of all the elements of its claim.

Pursuant to New York law, there are four elements to a breach of contract claim: "(1) the

existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach

of contract by the defendant, and (4) damages." *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d

Cir. 1996).  "To plead these elements 'a plaintiff must identify what provisions of the contract

were breached as a result of the acts at issue.'" *Ellington Credit Fund, Ltd. v. Select Portfolio*

*Servicing, Inc.*, 837 F. Supp. 2d 162, 189 (S.D.N.Y. 2011) (quoting *Wolff v. Rare Medium, Inc.*, 171 F. Supp. 2d 354, 358 [S.D.N.Y. 2001). "In determining a party's obligations under a contract, 'the initial interpretation of a contract is a matter of law for the court to decide.'" *Ellington Credit, Ltd.*, 837 F. Supp. 2d at 189 (quoting *K Bell & Assocs., Inc. v. Lloyd's Underwriters*, 97 F.3d 632, 637 [2d Cir. 1996]).

Here, through its pleadings and exhibits, Plaintiff has demonstrated the existence of an agreement, adequate performance of the contract by Plaintiff, a breach of the contract by Defendant, and the ensuing damages as a result of Defendant's breach. (*See generally* Dkt. No. 1; Dkt. No. 15, Attach 2-9.) As a result, the Court finds that Plaintiff has met all the requirements to show liability for the purposes of its motion for default judgment.

With regard to the remedy that Plaintiff requests, Plaintiff seeks the following damages: (1) damages in the principal amount of $412,273.60; (2) pre-judgment interest of $51,336.53 through July 24, 2020, with a per diem interest in the amount of $101.66 for each day thereafter until the date a Judgment is entered; (3) post-judgment interest from the date of the Judgment accruing at the applicable rate in accordance with 28 U.S.C. § 1961; and (4) costs through July 24, 2020, in the amount of $775.00. (*See generally* Dkt. No. 15.)

Based on the evidence adduced by Plaintiff, the Court finds that it has met its burden of establishing its right to this relief. (*See generally* Dkt. No. 15. Attach. 2 [Sabourin Affirm.]; Dkt. No. 15, Attach. 8 [Invoice for Service of Summons and Complaint]; Dkt. No. 15, Attach. 9 [Invoice for Service of Entry of Default].) For all of these reasons, the Court grants Plaintiff's motion.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion is **GRANTED**; and it is further

**ORDERED** that the Clerk of Court shall enter a Judgment in favor of Plaintiff against

Defendant in the total amount of $464,385.13, plus daily interest at the rate of $101.66 from July

24, 2020, through the date of entry of Judgment, plus interest after entry of Judgment at the rate

provided for by 28 U.S.C. § 1961.

Date:   March 2, 2021
        Syracuse, New York

_____
Glenn T. Suddaby
Chief U.S. District Judge